Filed 8/31/15  P. v. Gosai CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ASHIKA PRIYA GOSAI,<br><br>        Defendant and Appellant. | A142535<br><br>(San Mateo County<br>Super. Ct. No. SC079613A) |

Two children, ages 11 and 16, ran across a six-lane road against a red light and were hit by a car driven by defendant Ashika Priya Gosai, a 21-year-old nursing student, whose view of the children was blocked by a truck in the next lane and who thus was unable to avoid impact. Defendant panicked, drove away from the scene of the accident, but within five minutes voluntarily returned and cooperated with the police who had just arrived on scene. Defendant was exonerated of all fault for the accident but prosecuted for leaving the scene of an injury accident, an offense that may be punished as a felony or misdemeanor. (Veh. Code, § 20001, subd. (a).) Defendant contends the court erroneously precluded her from presenting expert testimony that she failed to stop at the scene because of an acute stress response and abused its discretion in refusing to designate the offense as a misdemeanor. We shall affirm the conviction but modify the judgment to reduce the offense from a felony to a misdemeanor.

**Evidence Presented at Trial**

The following evidence was presented at a trial.

1

On the morning of August 7, 2012, defendant, a 21-year-old nursing student, left work and was driving to her cousin's house in Millbrae. Less than a mile from her destination, she stopped at a red light at the intersection of El Camino Real and Hillcrest Boulevard. When the traffic light turned green defendant and other motorists started through the intersection. Two children, 16-year-old Kara and her 11-year-old brother Justin, jumped off the curb on the opposite side of the street and ran through the intersection against a red light and across six lanes of traffic. Defendant, whose view was obscured by a large truck in the next lane, did not see the children until it was too late. She struck and injured them.

Defendant had not taken any drugs or consumed any alcohol that day and was not texting or talking on the phone. When she struck the children she was driving at about 30 miles per hour, within the posted speed limit. An expert on auto collisions who testified for the prosecution found the children wholly at fault for the accident. The expert testified that the children were visible to defendant for only about one second as they ran in front of her car, which did not provide sufficient time for a driver to stop and avoid impact.

Defendant knew she hit "a person" but later said that she did not see that she hit two children. Defendant admitted she "panicked." She testified that "[i]t just happened so fast" that she "didn't know what to do," "didn't know how to help," and "didn't even know what to do with [her]self." She drove to her nearby cousin's house for help. She sped down El Camino Real, turned onto the street where her cousin lived, and pulled into the driveway of her cousin's house. The distance from the site of the accident to the cousin's house is .8 miles, about a two-minute drive.

Defendant stepped from her car and from the driveway called to her cousin for help. A neighbor heard defendant repeatedly "screaming" her cousin's name. The neighbor described defendant as "hysterical" and "out of control." The cousin came out of the house and defendant asked her to accompany her to the accident site but the cousin said she could not leave her three children unattended. Defendant decided to return alone, backed out of the driveway onto the street, and pointed her car toward El Camino Real. However, a motorist who had followed her from the scene of the accident pulled in front

2

of her car, blocking her departure. The motorist testified he "believe[d]" defendant had just stepped from the car into the driveway when he "was able to catch up" with her but the neighbor corroborated defendant's statement that she had backed out of the driveway and was heading toward El Camino Real when confronted by the motorist. The motorist testified that he parked his car to block hers from leaving, called 911, and yelled at her that she "hit two kids" and "need[ed] to go back." Defendant responded, "I know, I know." Defendant testified that she asked the motorist to return with her because she was "scared" and "didn't want to drive" but he testified "I don't remember that." The motorist moved his car so defendant could leave and she drove back, returning to the scene within five minutes of the collision. At the scene, other motorists with medical training had provided aid to the children until paramedics arrived. Defendant returned about one minute after the first police officer and ambulance had reached the site.

Witnesses described defendant upon her return as "hysterical," "in shock," "upset," "stunned," and "[t]rying to absorb what had just happened." One witness said defendant was crying hysterically, had her hands to her face, and kept repeating "Did I do that?" An officer who interviewed defendant testified that she was "very upset," "crying," and asked "a couple of times" about the children's condition. The officer said it took 10 minutes "to get her enough calmed down where [he] was able to talk to her." An audio recording of the police interview reveals defendant to be crying and distraught. Defendant provided a valid driver's license, her vehicle registration and proof of insurance to the officer. She told the officer she drove to her cousin's house because she "panicked" and was "in shock."

The children were taken to the hospital for treatment. Kara suffered a deep laceration to her foot from a sandal strap driven into her heel by the force of the collision. She was released from the hospital the same day of the accident but was wheel-chair bound for over two months. Justin suffered a serious head injury and has cognitive impairment, necessitating his placement in special education classes.

**Verdict and Sentencing**

The prosecutor charged defendant with two felony counts of failing to stop at the scene of an injury accident (Veh. Code, § 20001, subd. (a)) and the jury found defendant guilty as charged. The probation officer's sentencing report notes that defendant has been gainfully employed since age 18, is pursuing a career in nursing, and has no criminal history apart from a traffic infraction incurred as a minor. Months before the report was prepared, defendant passed the vocational nurse examination but her eligibility for licensure is under review due to this conviction. The probation officer recommended probation but concluded "the extent of the victims' injuries and [defendant] leaving the scene warrant a significant sanction. Therefore, [it] is recommended the defendant serve a one-year jail commitment" as a condition of probation. The probation officer reasoned: "Although the collision was unavoidable, the outcome of the entire incident may have been different had she stopped to assist the victims."

The injured children's parents provided written statements included in the probation officer's report. The children's father asked, "What makes someone do what she did? – to leave two hurt children lying in the street expecting someone else to help them. That is the low of the low. . . . I am so mad at [defendant] for leaving them there – that being said I do not think the court should go lightly on her. . . . I think she needs to learn a lesson that takes away her freedom just like ours were taken away on the 7th day of August, 2012."

Defendant's counsel submitted a sentencing memorandum asking the court to reduce the felonies to misdemeanors and stating defendant's "one desire in life is to become a health care professional and to help others. Certainly, the public interest is served by her achieving that goal. A felony conviction would for all intents and purposes make that goal impossible." (Pen. Code, § 17, subd. (b).) Defendant wrote to the court saying she "felt disgusted" with herself because she grew up wanting to "save lives" and "be a hero to someone" but, when the accident happened, "panicked" and "was not able to think right away." Defendant wrote: "I realize I made a mistake, but please give me another chance to show you how I can help society, please don't take away what I have

4

worked so hard to accomplish. I know I can make a difference. I was not able to prove myself the first time in my accident, but please give me an opportunity to show you the second time around." Defendant's employer, nursing instructor, friends, and family members wrote to the court attesting to her good character.

At the sentencing hearing on June 20, 2014, E. Robert Cassidy, a psychologist, testified the accident was "a highly emotional traumatic event" that caused defendant to experience "an acute stress response" marked by "a sense of panic, extreme anxiety, a loss of rational thinking," impulsive behavior and disconnection from reality. Cassidy noted that defendant sought medical attention for her anxiety on the evening of the accident and an evaluation showed her to have a rapid pulse rate and elevated blood pressure, "all indicating that she was experiencing even that many hours after the incident a great deal of distress." He interviewed defendant and found her extremely remorseful about her conduct and unlikely to reoffend. The psychologist testified: "I didn't see her as a person who was given to criminality and needs to have a period [of incarceration] where she can be rehabilitated."

The court dismissed one of the two counts of failing to stop at the scene of an injury accident, finding a single violation even though more than one person was injured. The Attorney General acknowledges the correctness of this ruling. (*People v. Newton* (2007) 155 Cal.App.4th 1000, 1002-1005.)

In sentencing, the court stated the following: "This is a general intent offense. [Defendant] ultimately at different points has indicated she panicked. I do think that she knows she hit two children. The thing that I am concerned with here is the kind of the overall tone of what I am hearing here. [¶] Yes, the two minors involved in this case Justin and Kara did an incredibly stupid thing. Their actions back on that date in August are going to irreparably change their lives just like the actions on that day will change [defendant's] life. They shouldn't have crossed the roadway in a red light. And I think they have learned a very hard reality having done that. [¶] That having been said, that doesn't mean that [defendant] is the victim in this whole thing. Had she simply stopped at the scene, the great likelihood is she would not have faced any real civil [or criminal]

liability because it's evident from the testimony put on at trial that the underlying collision was caused by the actions of Justin and Kara by having crossed the street against the red light. [¶] It's what occurred from that point forward that we are dealing with here, and [from] that standpoint [defendant] is no victim, and her actions throughout the trial candidly I did not take as being simply honest, the uncontrolled emotion, I believe there were many times [that] things . . . were being enhanced for the purpose[] of trying to influence the jury . . . . I have considered [this] as it relates to the defense requests here [on] a number of things."

Following this statement, the court denied defendant's request to reduce the offense from a felony to a misdemeanor. The court said it reviewed cases on the matter but provided no reasons for its ruling apart from its general comments noted above. The court stated the denial was "without prejudice for further and future review" but stated no conditions that, if met, would support reducing the offense to a misdemeanor. The court suspended imposition of sentence and granted probation conditioned upon serving six months in county jail. The court said it reached this result by "a balancing and measuring in terms of understanding the underlying collision which clearly was not the fault of [defendant] versus her actions by having fled the scene." The court found defendant's conduct "warrants some form of punishment. [¶] As the parents of Justin had indicated in their statements to the court here, their anger in leaving two hurt children laying on the road expecting that somebody else is going to help them, that being the lowest of the low." The court denied defendant's request for bail pending appeal and set a date for her to surrender, subsequently continued to September 6, 2014. Defendant presumably has now served her jail sentence and remains on felony probation.

**Discussion**

1. *The court did not err in precluding a psychologist from testifying that defendant had an acute stress response that made her failure to stop at the scene of the accident reasonable under the circumstances.*

In pretrial proceedings, the defense offered the psychologist who later testified at the sentencing hearing to testify at trial that defendant had an acute stress response that

6

made her failure to stop at the scene of the accident reasonable under the circumstances. Defense counsel argued that a motorist must stop at the scene of an injury accident "as promptly as possible under the circumstances" (*People v. Odom* (1937) 19 Cal.App.2d 641, 647) and that those circumstances include the motorist's mental state. Defense counsel told the court: "We are not saying that this is evidence of diminished capacity or insanity or an affirmative defense. . . . [W]e are saying a crime was never committed . . . because . . . the driver must stop his or her vehicle as soon as is reasonably possible under the circumstances" and defendant's "acute stress response . . . required that she goes eight-tenths of a mile until she got a grip of herself and then turned around and came back." The prosecution objected to the proffered evidence. The court ruled that expert testimony on defendant's mental state is irrelevant to the charged offense, a general intent crime and, thus, inadmissible.

On appeal, defendant argues that exclusion of the psychologist's testimony deprived her of her constitutional right to present a defense. (*Washington v. Texas* (1967) 388 U.S. 14, 18-19.) The Attorney General responds that defendant forfeited the constitutional claim by failing to assert it in the trial court and, in any event, the evidence was properly excluded as irrelevant.

Defendant's contention, whether addressed as a state law or constitutional claim, fails on the merits. "The driver of a vehicle involved in an accident resulting in injury to a person . . . shall immediately stop the vehicle at the scene" and present identification and render reasonable assistance to the injured. (Veh. Code, § 20001, subd. (a).) " 'The legislative purpose of [the law] is to prevent the driver of a vehicle involved in an injury-causing accident from leaving injured persons in distress and danger for want of medical care and from attempting to avoid possible civil or criminal liability for the accident by failing to identify oneself.' " (*People v. Valdez* (2010) 189 Cal.App.4th 82, 87.)

It is true, as defendant argues, that the law must be given a "reasonable interpretation" and does not "require the driver to do an impossible or useless thing." (*People v. Steele* (1929) 100 Cal.App. 639, 646.) Thus, a motorist rendered unconscious by a collision is not expected to provide identifying information until he regains

7

consciousness. (*People v. Scofield* (1928) 203 Cal. 703, 708.) Likewise, "it is conceivable that a vehicle might be traveling at such a high rate of speed that it could not be stopped immediately after the collision, or that the highway is in such condition that the driver would be compelled to move on to a safe stopping place." (*Steele, supra,* at p. 646.) The law, however, clearly contemplates that a motorist stop at the scene of an injury accident as soon as *physically possible*. Defendant has not cited any case in which a motorist's panic, or other subjective mental state, was found to excuse the obligation to stop. Injury accidents are traumatic events that inevitably cause mental distress, but the law requires motorists to maintain sufficient self-control to meet the basic obligation to stop and provide identification and aid. The offense of failing to stop at the scene of an injury accident is a general intent crime. (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1019.) In a general intent crime, "the required mental state entails only an intent to do the act that causes the harm." (*People v. Davis* (1995) 10 Cal.4th 463, 518, fn. 15.) Defendant intended to leave the accident scene and the proffered expert testimony would tend to prove only why she did so. The testimony was properly excluded as irrelevant.

2. *The court abused its discretion in punishing defendant as a felon.*

Defendant contends that the court abused its discretion in denying her request to treat the offense as a misdemeanor rather than a felony. The Attorney General argues that "the court stated the reasons for its decision, and made the 'thoughtful and conscientious assessment' that *Alvarez* [*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968] requires. The most [defendant] has shown is that reasonable people might disagree with the assessment of those factors. That showing is not sufficient to find an abuse of discretion." However, the Attorney General makes no further attempt to defend the reasonableness of the sentencing decision or to explain why the relevant criteria do not compel reduction of the offense to a misdemeanor. "[T]rial court discretion is not unlimited. 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is

shown.' " (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.) We can find no reasonable basis for punishing defendant as a felon.

"The Legislature has classified most crimes as *either* a felony or a misdemeanor, by explicitly labeling the crime as such, or by the punishment prescribed. . . . . There is, however, a special class of crimes involving conduct that varies widely in its level of seriousness. Such crimes, commonly referred to as 'wobbler[s]' [citation], are chargeable or, in the discretion of the court, punishable as either a felony or a misdemeanor." (*People v. Park* (2013) 56 Cal.4th 782, 789 (*Park*).) Failing to stop at an injury accident is a "wobbler." (Veh. Code, § 20001, subd. (b).)

The prosecutor's decision to charge a wobbler as a felony is not determinative of whether a defendant is properly punished for a felony; that decision is for the court. (Pen. Code, § 17, subd. (b)(3); *Park, supra,* 56 Cal.4th at p. 790.)[1] "[T]he Legislature has empowered the courts to decide, *in each individual case*, whether the crime should be classified as a felony or a misdemeanor." (*Park, supra,* at p. 801, italics added.) Penal Code section 17 " ' "specifically leaves the determination of the nature of the conviction to the discretion of the judge." ' " (*Id.* at p. 800.) "The court's authority to exercise discretion in this regard is a long-established component of California's criminal law." (*Id.* at p. 790.)

A court properly exercises its discretion to reduce a wobbler to a misdemeanor when it finds that felony punishment, and its consequences, are not appropriate for that particular defendant. (*Park, supra,* 56 Cal.4th at p. 801.) "Such a defendant is not blameless" (*ibid.*) but neither is such a defendant one that requires felony punishment for rehabilitation or to deter future criminality by the threat of increased punishment for a subsequent felony offense (*id.* at pp. 790, 801-802). In making its determination, the

---

[1] Penal Code section 17, subdivision (b)(3) provides, in relevant part: "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in the county jail . . . it is a misdemeanor for all purposes . . . [w]hen the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."

9

court should consider factors relevant to similar sentencing decisions, including " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense or his [or her] traits of character as evidenced by his [or her] behavior and demeanor at the trial.' [Citations.] When appropriate, judges should also consider the general objectives of sentencing such as those set forth in California Rules of Court, rule 410 [now rule 4.410]."[2] (*People v. Superior Court* (*Alvarez*)*, supra,* 14 Cal.4th at p. 978.)

Virtually all of these factors militate in favor of treating defendant's offense as a misdemeanor, rather than branding defendant as a felon. Defendant left the accident site in a state of panic, not with cold indifference to the possibility of injuries or in a calculated effort to avoid liability. Defendant testified the accident "just happened so fast" that she "didn't know what to do," "didn't know how to help," and "didn't even know what to do with [her]self." Eyewitnesses confirm that defendant's upset was real, not feigned. Defendant drove less than one mile to her cousin's house seeking help and voluntarily returned to the accident site minutes later. The probation report says "[i]t is unknown whether she would have returned to the scene had she not been followed," but the weight of the evidence supports defendant's claim that she resolved to return to the scene and repositioned her car to do so before the motorist who followed her appeared and blocked her return. The motorist testified he "believe[d]" defendant had just reached her cousin's driveway when he confronted her, but a neighbor who witnessed the

---

[2] California Rules of Court, rule 4.140 states as follows: "(a) General objectives of sentencing include: [¶] (1) Protecting society; [¶] (2) Punishing the defendant; [¶] (3) Encouraging the defendant to lead a law abiding life in the future and deterring him or her from future offenses; [¶] (4) Deterring others from criminal conduct by demonstrating its consequences; [¶] (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration; [¶] (6) Securing restitution for the victims of crime; and [¶] (7) Achieving uniformity in sentencing. [¶] (b) Because in some instances these objectives may suggest inconsistent dispositions, the sentencing judge must consider which objectives are of primary importance in the particular case. The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case."

confrontation corroborated defendant's account (stated to the police and at trial) that defendant had backed her car out of the driveway and was heading toward the El Camino accident site when the motorist arrived. Defendant's cousin also corroborated defendant's account in a letter to the court at sentencing.

Defendant's appreciation of and attitude toward the offense also supports a lesser punishment. There is ample evidence that defendant understands she made a grave mistake and is remorseful. Defendant expressed concern for the children when she returned to the scene and saw their injuries. A witness saw defendant crying and, with her hands to her face, asking repeatedly "Did I do that?" and the officer who interviewed defendant at the scene testified that defendant was "very upset," "crying," and asked "a couple of times" about the children's condition. Defendant wrote to the court that she was "disgusted" with herself, "extremely sorry" and "will always regret what I have done for the rest of my life." She wrote: "I realize I made a mistake, but please give me another chance to show you how I can help society." Defendant's employer wrote that defendant expressed to him "regret for the collision as well as remorse for leaving the scene." Defendant's nursing instructor wrote that defendant has repeatedly "expressed great remorse for what happened" and attested to defendant's "nature as being one who will greatly apply the lessons from this experience and will not repeat the same mistake."

Defendant's character, background and lack of criminal history also weigh heavily in favor of leniency. Since graduating high school, defendant has been working steadily while attending school to become a nurse. Her employer vouched for defendant's strong work ethic and her nursing instructor said defendant has the potential to become a highly capable Vocational Nurse "because of her kind, caring ways as well as her excellent nursing skills" but noted that a felony conviction will impair her ability to obtain a professional license necessary to a nursing career. Defendant's rehabilitation and ability to pay restitution are ill-served by a felony conviction that will limit her occupational prospects. "[T]he court's exercise of discretion . . . contemplates the imposition of misdemeanor punishment for a wobbler 'in those cases in which the rehabilitation of the

11

convicted defendant either does not require, or would be adversely affected by' " punishment as a felon. (*Park, supra,* 56 Cal.4th at p. 790.)

The reasons offered by the probation officer and the court to justify the more extreme characterization of the offense do not withstand scrutiny. The probation report states that "the extent of the victims' injuries and [defendant] leaving the scene warrant a significant sanction." The trial court noted that defendant left "two hurt children laying on the road." Every violation of Vehicle Code section 20001, subdivision (a) leaves potentially injured persons at the scene of an accident but the offense is a wobbler because the Legislature has recognized that violations "var[y] widely in its level of seriousness." (*Park, supra,* 56 Cal.4th at p. 789.) Many factors may make a particular violation more blameworthy so as to warrant felony punishment but the extent of the accident victims' injuries is not one of those factors. The children's injuries are of course unfortunate but they provide no basis for refusing to treat the offense as a misdemeanor. Vehicle Code section 20001, subdivision (a) "makes criminal the flight from the accident, not the accident" (*People v. Valdez, supra,* 189 Cal.App.4th at p. 85) and, thus, a violator of the statute is not criminally responsible for injuries caused by the collision that occurred prior to leaving the scene (*id.* at p. 90). This principle applies even where the defendant is at fault for the accident, which defendant here was not.

The probation officer stated: "Although the collision was unavoidable, the outcome of the entire incident may have been different had she stopped to assist the victims." Nothing in the record supports this statement. To the contrary, the record reflects that other medically trained persons came to the victims' immediate assistance. Moreover, the record also reflects that although the defendant was aware she had struck a person, she was not aware that she had injured the two children. Further, this incident did not occur on a lonely road where the victims were likely to go unattended if the defendant did not stop, but on a busy thoroughfare where others were present to provide needed assistance, as in fact occurred. The children's injuries were not aggravated by defendant's flight and would not have been ameliorated had defendant immediately stopped. Their injuries were a result of the collision, not defendant's flight.

12

In sentencing defendant, the court did not state reasons specific to its denial of her request for misdemeanor treatment but did make general comments that defendant saw herself incorrectly as a victim and had emotional outbursts at trial that were "enhanced for the purpose[] of trying to influence the jury." Assuming the correctness of the court's observations, we cannot agree that a defendant's self-pity and emotional appeal to a jury warrant felony punishment, given the overwhelming weight of the factors favoring leniency. The Legislature intended that some motorists who leave the scene of an injury accident shall be treated as felons and others as misdemeanants. The record contains no reason to question defendant's characterization of herself as a "remorseful young nursing student with no criminal history of any consequence who, when blamelessly caught up in a harrowing accident, first panicked and fled, and then came back of her own free will within five minutes." Indeed, the court may well have recognized the appropriateness of ultimately reducing defendant's offense to a misdemeanor when it expressly made its ruling "without prejudice to further and future review." In all events, we conclude that felony punishment, and its consequences, are not appropriate in this case, and that it was an abuse of discretion to fail to immediately reduce defendant's offense to a misdemeanor.

## Disposition

The judgment is modified to reduce the Vehicle Code section 20001, subdivision (a) conviction from a felony to a misdemeanor and is affirmed as so modified.

_____
Pollak, Acting P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.